**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **AIRPORT ROAD, LLC**<br>**Plaintiff**<br><br>**v.**<br><br>**FRANKEN REALTY, COVAL KENNETH WILD, JR., DOUG LAING and FRANK RAWCLIFFE, and JAY BEE REALTY, LLC**<br>**Defendants** | : | **C.A. No. 07-085 ML** |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

## I. INTRODUCTION

This is a tort claim brought by the owner of a large parcel of vacant land in Warwick, Rhode Island against the Defendants, who are owners of a neighboring parcel of industrial land. Plaintiff, AIRPORT ROAD, LLC filed a cost recovery action against FRANKEN REALTY, and its individual partners, and JAY BEE REALTY, LLC arising under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), title 42, section 9601 et seq. and 9607 and 9613 of United States Code, as amended. AIRPORT ROAD also filed counts against these Defendants under Rhode Island common law and statutes, including claims alleging negligence, public nuisance, private nuisance, trespass, equitable indemnification, diminution of Plaintiff's land, strict liability and violation of the Rhode Island Water Pollution Control Act, R.I.G.L. §46-12-1 et seq.

### A. FACTS

AIRPORT ROAD, LLC owns real property in Warwick, Rhode Island abutting Hallene Road and Airport Road, further designated as Lots 138 and 191 on Warwick Tax

Assessors Plat Map 311 ("Plaintiff's Land"). Plaintiff's Land is an approximately forty-seven acre site consisting of two contiguous parcels, shown on Warwick Tax Assessor's Plat Map 311, Lots 191 and 138.

JAY BEE REALTY, LLC, currently owns real property in Warwick, Rhode Island at 450 Pavillion Avenue, further designated as Lots 245 and 246 on Warwick Tax Assessor's Plat Map 311 ("Defendant's Land"). FRANKEN REALTY owned Defendant's Land until January 16, 2007. Defendant's Land is an approximately four and one-half acre site located on Hallene Road and Pavillion Avenue in Warwick, Rhode Island.

Defendant's Land contains an industrial building containing 28,939 square feet. The Defendant's Land is occupied by a manufacturing building and a storage garage. The rest of the property is mostly paved. An unpaved area with soil staining was formerly occupied by a lagoon and a temporary sludge storage area. Hazardous substances from the Defendant's Land, including, but not limited to, trichloroethylene, cis-1, 2-dichloroethene, trichloroethane, tetrachloroethylene, trans-1, 2-dichloroethylene, 1, 1-dichloroethane, arsenic, barium, chromium, lead, mercury, selenium, cadmium, and petroleum hydrocarbons, have contaminated both the soil and subsurface aquifers which underlie both the Defendant's Land and the Plaintiff's Land.

The Defendant's Land was previously owned or occupied by COVAL CORPORATION, a/k/a Mays, Marshall & Meier Co. (hereinafter, "COVAL"). At all times relevant hereto, C. Kenneth Wild, Jr. was the president of COVAL. COVAL was a Rhode Island corporation with its principal place of business located at 450 Pavillion

Avenue in Warwick, Rhode Island. The corporate charter for COVAL was revoked in 1999.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that the Defendant owners of the property located at 450 Pavillion Avenue, Warwick, Rhode Island deposited volatile organic compounds on their property, including but not limited to, arsenic and trichloroethylene. The volatile organic compounds migrated through ground water to property owned by Airport Road, LLC. The 450 Pavillion Avenue site is EPA registered. The property is listed on the CERCLIS database as RCRA, Identification No. RID001188549 and Facility Identification No. 02887MYSMR450PA. The CERCLIS database is complied by the environmental protection agency concerning properties that the EPA has investigated or is currently investigating for a release or threatened release of hazardous substances under the act.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that, according to records of the United States Environmental Protection Agency, ("USEPA"), from 1961 to 1997, COVAL manufactured metal (brass, bronze, silver, gold, etc.) clips for pens and pencils on the property. Reportedly, trichloroethylene (TCE) and 1,1,1-trichloroethane (TCA) were solvents used in the manufacturing process. On-site manufacturing processes generated waste solvent mixed with quenching oil and tumbling wastes (liquids and solids). The solvent wastes were distilled and stored in 55-gallon drums prior to removal from the property by a waste hauler. For an unknown period of time, the tumbling wastes containing silica flour, a water-soluble oil, detergent, and a soluble rust inhibitor were discharged to a lagoon formerly located in the southern portion of the property. Settled sludge was periodically removed from the lagoons, stored

on ground surface, allowed to dry, and then transported to an off-site landfill. COVAL was permitted to discharge wastewater to nearby surface waters.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that, according to records of the USEPA, previous investigations of the property include a Preliminary Assessment (PA) completed in 1987; a Site Inspection (SI) completed in 1990; a Remedial Investigation conducted by Environmental Science Service (ESS); and a Site Inspection Prioritization (SIP) completed in 1994. Analytical results of source/soil samples collected from the property indicated soil contamination with volatile organic compounds (VOCs), carbon disulfide, chromium, copper, lead, nickel, zinc, and total petroleum hydrocarbons.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that Defendant has been identified by USEPA as a potentially responsible party with respect to hazardous substances in the Defendant's Land, and, in response to USEPA's demand that they do so, have undertaken investigative and limited remedial activities at the Defendant's Land and the surrounding area. Defendants are obligated--and have actually undertaken, albeit inadequately and without due consideration for property of Plaintiff to, inter alia: investigate the nature and extent of the contamination caused by their continuing operation and maintenance of the Defendant's Land; install sample and monitoring wells in the Defendant's Land; interpret the data generated by this sampling; report to USEPA and the public about the results of Defendants' sampling; report to Rhode Island Department of Environmental Management regarding the results of Defendant's sampling.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that hazardous substances from the Defendant's Land, including, but not limited to, trichloroethylene, cis-1, 2-dichloroethene, trichloroethane, tetrachloroethylene, trans-1, 2-dichloroethylene, 1, 1-dichloroethane, arsenic, barium, chromium, lead, mercury, selenium, cadmium, and petroleum hydrocarbons, have contaminated both the soil and subsurface aquifers which underlie both the Defendant's Land and the Plaintiff's Land. Further, the Plaintiff's property continues to be a down-gradient receptor of contaminates from the Defendant's property.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that Plaintiff has performed a removal site evaluation for the release and threatened release of hazardous substances. As the result of an administrative proceeding instituted by the USEPA and the Rhode Island Department of Environmental Management, a portion of the Site is designated "Environmental Land Use Restriction Area." To resolve the administrative proceeding, an environmental land use restriction for soil and groundwater restriction was recorded in Warwick Deed Book 3028, Page 293 on November 17, 1998.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that RIDEM has determined that a contaminated site exists in the State which pose a direct and/or potential threat to human health and the environment. Based on the reported groundwater flow direction, the data suggests that the Plaintiff's Site is likely a down-gradient receptor of groundwater contamination originating from the up-gradient 450 Pavilion Avenue property of the Defendant. Section 46-12-3 of the R.I.G.L. empowers RIDEM to develop comprehensive programs for the prevention, control and

abatement of new or existing pollution of the waters of the State and to make, issue, amend and revoke rules and regulations for the prevention, control and abatement of such pollution. Section 46-12-5 prevents the unpermitted or unapproved placement of a pollutant in any location where it may enter the waters of the State and prevents the unpermitted discharge of any pollutant into those waters. Section 46-12-28 includes groundwater as waters of the state and protects all groundwater from the unapproved and unpermitted in-ground or surface discharge or disposal of industrial or commercial pollutants. The policy of the State is not to allow the unpermitted introduction of pollutants into the environment of the State. It is also the policy of the State that the environment shall be restored, to the extent practicable, to a quality consistent with its beneficial uses.

Plaintiff expects to offer witnesses and documents at trial that will demonstrate that, as a result of the physical contamination of the Plaintiff's land from hazardous substances release by the Defendant, the Plaintiff's land has suffered a diminution in its value. The value of such diminution is being established at the present time. The Environment Land Usage Restriction (ELUR) serves to restrict future use of the property from residential use or development and will prohibit the potable use of groundwater at the Site. The ELUR restricts subsurface structures in the areas which have exceedances of GB groundwater objectives. Plaintiff has incurred or will incur costs in performing a site evaluation, in drilling monitoring wells, excavating contaminated soils, disposing contaminated soils, pumping and treating the groundwater and for further relevant costs for remediating the Plaintiff's Land, in an amount exceeding $2,000,000.00.

Defendants dispute all of these facts.

## B. PLAINTIFF'S CLAIM AGAINST DEFENDANTS:

The Plaintiffs assert claims against the Defendants sounding in:

1. Negligence;
2. Strict liability;
3. Public nuisance;
4. Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), title 42, section 9601 et seq. and 9607 and 9613 of United States Code, as amended;
5. private nuisance;
6. trespass;
7. equitable indemnification;
8. diminution of Plaintiff's land
9. strict liability; and
10. violation of the Rhode Island Water Pollution Control Act, R.I.G.L. §46-12-1 et seq.

## C. DAMAGES:

The discovery and presence of contaminants on the Plaintiff's Land and the resulting ELUR has resulted in a permanent diminution of the value of the Plaintiff's Land. The discovery and presence of contaminants on the Plaintiff's Land and the resulting ELUR has also substantially limited Plaintiff's ability to use and enjoy its property. Plaintiff seeks remediation of its property as a remedy in this case. No matter the final outcome of the Plaintiff's request for abatement and/or remediation, the

evidence will demonstrate that permanent stigma associated with the presence of contaminants on the Plaintiff's Land has caused an irreparable diminution in property values. Given this status, Plaintiff will offer evidence of the diminution of its property value.

**D. <u>FACTUAL AND LEGAL ISSUES FOR ADJUDICATION</u>:**

The factual and legal issues that must be resolved in order to fairly adjudicate this case are as follows:

1. Whether the contaminants present on the Defendant's Land have migrated and contaminated the Plaintiff's Land;
2. Whether the Defendants committed some act or omissions so that they are liable for the presence of contaminants on the Plaintiff's Land;
3. Whether Defendants are strictly liable for damages caused due to the fact that their disposal of waste was an abnormally dangerous activity;
4. Whether the disposal of the Defendant's waste on the Defendant's Land created a public nuisance causing the Plaintiff to suffer a special harm for which the Defendants are liable;
5. Whether existence of contaminants on the Plaintiff's Land has substantially contributed to the diminution of property value of the Plaintiff's Land; and
6. Whether existence of contaminants on the Plaintiff's Land has substantially interfered with Plaintiff's reasonable use and enjoyment of its property.

**E. ARGUMENTS IN SUPPORT OF PLAINTIFFS' CLAIMS:**

The Plaintiffs' claims for negligence, public nuisance, private nuisance, trespass, equitable indemnification, diminution of Plaintiff's land, strict liability and violation of the Rhode Island Water Pollution Control Act are recognized under Rhode Island law. The Plaintiffs' CERCLA claims are cognizable under Federal law.

1. Negligence:

The Defendants have a duty under a negligence theory "to refrain from conduct that contaminates or otherwise harms neighboring properties." *Corvello v. New England Gas Co., Inc.*, 460 F.Supp.2d 314, 320-21 (D.R.I. 2006) (citing *O'Donnell v. White*, 50 A. 333 (R.I. 1901)). At trial, the plaintiffs will offer evidence that Defendants breached this duty and that disposal of contaminants in open pits created an unreasonable risk of harm.

2. Strict Liability:

Plaintiffs will demonstrate that Defendants disposal of toxic waste in open pits constituted an ultra-hazardous or abnormally dangerous activity as a matter of law. Rhode Island follows the Restatement (Second) of Torts §520 (1977) which provides that such activities warrant the imposition of strict liability. *Corvello v. New England Gas Co., Inc.*, 460 F.Supp.2d at 321-22, citing *Splendorio v. Bilray Demolition Co., Inc.*, 682 A.2d 461 (R.I. 1996).

3. Public Nuisance:

Private plaintiffs, such as the Plaintiff as the owner of neighboring property, may maintain an action for public nuisance. *Corvello v. New England Gas Co., Inc.*, 460 F.Supp.2d at 324-25, citing *Hydro Manufacturing Inc. v.*

*Kayser-Roth Corp.*, 640 A.2d 950 (R.I. 1994). The public nuisance doctrine applies in situations where a company creates an environmental threat to the health and safety of Rhode Islanders. *Wood v. Picillo*, 443 A.2d 1244 (R.I. 1982). The Plaintiffs will offer evidence establishing that the Defendants unreasonably interfered with a "right common to the general public" and that the plaintiff sustained "special damages" as a result of the interference. *Hydro-Manufacturing*, 640 A.2d at 957-58. Individuals or entities that either created or contributed to the creation of a public nuisance may be liable for that nuisance without regard to the issue of control. *Friends of Sakonnet v. Dutra*, 738 F.Supp. 623 (D.R.I. 1990). Defendant's participation in the creation of a public nuisance renders it liable for the resulting damages. *Payne & Butler v. Providence Gas Company*, 31 R.I. 295, 358, 77 A. 145, 170 (R.I. 1910); *Wood v. Picillo*, 443 A.2d at 1248.

4. Proximate Cause:

A plaintiff is entitled to recover those damages that could reasonably have been foreseen as a natural and probable result of the original act of the negligence (or other liability based conduct) of the defendant. A defendant's liability for damages includes those damages caused by an intervening act, provided the act was a reasonably foreseeable consequence of the defendant's wrongful conduct. *Roberts v. Kettelle, et al.*, 356 A.2d 207, 215 (R.I. 1976); *Aldcroft v. The Fidelity and Casualty Co. of N.Y.*, 259 A.2d 408, 411 (R.I. 1969).

5. Cost Recovery Under CERCLA, 42 U.S.C. § 9607(a):

Each named Defendant is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). Each named Defendant is an "owner" and/or "operator" of a "facility" and/or "generator" and/or "transporter" of "hazardous substances" within the meaning of CERCLA, 42 U.S.C. § 9601. Each Defendant is a covered person under 42 U.S.C. § 9607(a). As a result, each Defendant is a liable person under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). The Defendant's Land is a "facility" as defined by § 101 (9) of CERCLA, 42 U.S.C. § 9601(9). "Releases" of "hazardous substances" from the Defendant's Land into the "environment" are continuing. The releases have resulted in the migration of hazardous substances into the Plaintiff's Land. As a result of these releases, Plaintiff has incurred and will continue to incur "response costs" within the meaning of Section 101(23)-(25) of CERCLA, 42 U.S.C. §§ 9601 (23)-(25). All such costs are reasonable and, when applicable, consistent with the National Contingency Plan. Plaintiffs did not pollute the Defendant's Land or otherwise cause the release of hazardous substances from that facility. Accordingly, Defendants are strictly liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for all such costs. Plaintiff has incurred response costs. As a result of releases of hazardous substances from the Defendant's Land (a "facility" under § 101 (9) of CERCLA, 42 U.S.C. § 9601(9)), Plaintiff has incurred and will continue to incur "response costs" within the meaning of Section 101 (23)-(25) of CERCLA, 42 U.S.C. §§ 9601 (23)-(25). All such costs are reasonable, and when applicable, consistent with the National Contingency Plan.

6. Cost Recovery Under CERCLA, 42 U.S.C. § 9613(f):

Plaintiff did not cause or contribute to the environmental contamination at the site and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the site. However, in the interest of an expeditious cleanup and acting in good faith, plaintiff undertook actions in an effort to remediate the environmental contamination at the Plaintiff's Land. Plaintiff has incurred and will incur costs of $ 2,000,000, in the course of taking these actions. These actions and the costs incurred in taking them are consistent with the National Contingency Plan. Plaintiff did not cause or contribute to the environmental contamination at the site and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the site. Each Defendant is liable to plaintiff for contribution under CERCLA section 113(f), title 42, section 9613(f) of the United States Code, for some or all amounts that plaintiff has incurred and may, in the future, incur as the result of the release or threatened release of hazardous substances from the site, in that defendant is liable for response costs under CERCLA § 107(a), title 42, § 9607(a) of the United States Code.

7. Violation of Rhode Island Water Pollution Control Act:

The Rhode Island Water Pollution Control Act, § 46-12-1, et seq. is designed, inter alia, to protect Rhode Island waters, human health and property. Defendants' continuing violations of the Rhode Island Water Pollution Control Act are the proximate cause of substantial injury and damage to Plaintiff, including, but not limited to, injury in the form of damage to Plaintiff's Land.

Defendants' breaches of their duties to Plaintiff under the Rhode Island Water Pollution Control Act are continuing and have caused substantial injury and damage to Plaintiff, including, but not limited to, injury in the form of damages to its property. By contaminating the Plaintiff's Land, Defendants caused physical damage to Plaintiff's Land, including water protected by the Water Pollution Control Act.

**F. PENDING MATTERS FOR CONSIDERATION PRIOR TO TRIAL:**

Other than discovery motions pending before the Court, Plaintiff has no motions pending.

**G. PROBABLE LENGTH OF TRIAL:**

Plaintiff anticipates that the trial will last approximately six (6) or seven (7) trial days.

**Respectfully submitted,**

**Airport Road, LLC**
**By its attorneys,**

**/s/Stephen A. Izzi**
**Thomas V. Moses (#2763)**
**Stephen A. Izzi (#2928)**
**Richard J. Welch (#4497)**
**Moses & Afonso, Ltd.**
**170 Westminster Street, Suite 201**
**Providence, Rhode Island 02903**
**Ph: (401) 453-3600**
**Fx: (401) 453-3604**
**sizzi@mosesafonso.com**

**Dated: September 4, 2008**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2008, I served by electronic filing (ECF) a true copy of the within PLAINTIFF'S PRETRIAL STATEMENT OF AIRPORT ROAD, LLC to the following participants:

Gregory Piccirilli, Esq. and Joseph Sciacca, Esq.
gregory@splawri.com

Thomas C. Angelone, Esq.
angelonelaw@aol.com

/s/Stephen A. Izzi
Stephen A. Izzi