**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **AIRPORT ROAD, LLC**<br>**Plaintiff**<br><br>**VS.**<br><br>**FRANKEN REALTY, a Rhode Island General Partnership consisting of Coval Kenneth Wild, Jr., Doug Laing and Frank Rawcliffe, and JAYBEE REALTY, LLC, a Rhode Island limited liability company**<br>**Defendants** | : | **C.A. No. 07-085ML** |
| **FRANKEN REALTY, Coval Kenneth Wild, Jr., Doug Laing, and Frank Rawcliffe**<br>**Cross-claim Plaintiffs and Defendants**<br><br>**VS.**<br><br>**JAYBEE REALTY, LLC, a Rhode Island limited liability company**<br>**Cross-claim Defendants and Plaintiffs** | : | |

**DEFENDANTS JOINT PRETRIAL MEMORANDUM**

**INTRODUCTION:**

Plaintiff filed suit against Defendants alleging they are liable for contamination of Plaintiff's land under a CERCLA cost recovery action, and various state law claims for negligence, public nuisance, strict liability, and the RI Water Pollution Control Act. Defendants have cross-claimed that the other is liable for the damages under various theories of indemnity. Defendants have agreed and will ask that this Court grant a severance of their cross-claims, since Defendants will assert that there are no claims asserted by Plaintiff that are viable or will result

in liability.

**A. FACTS:**

Defendants assert that the evidence in the case will show the following:

1. That AIRPORT ROAD, LLC, owns property at Hallene Road and Airport Road in Warwick, RI, and purchased that property in January of 2006 for a reported $5,750,000.
2. At the time of purchase, Plaintiff was fully aware of the potential contamination which existed on the Hallene property, as well as the possible causes of that contamination, having conducted numerous environmental assessments of the property, and having reviewed governmental records relating to the contamination, including an Environmental Land Use Restriction (ELUR), which limits the potential development of the property.
3. That Defendant JAYBEE REALTY, LLC, rented the property located at 450 Pavillion Avenue, Warwick, RI, from Defendant FRANKEN REALTY, from approximately 1998 until purchasing it on January 16, 2007.
4. That Plaintiff attempted to purchase the Pavillion Avenue property from Defendant FRANKEN REALTY in 2006, prior to Defendant JAYBEE's purchase of the property from FRANKEN.
5. That the now defunct COVAL Corporation, and its predecessor company, Mays, Marshall and Meyers Co., manufactured metal clips for pens and pencils on the Pavillion Avenue property.
6. That there is no evidence that any of Defendants engaged in activities which would cause contamination of the groundwater in or surrounding its property for a period within ten

years of the filing of Plaintiff's complaint.

7. That beginning in 1987, environmental assessments of the Pavillion Avenue property showed evidence of contamination of volatile organic compounds (VOCs).

8. That since the purchase of the Pavillion Avenue property in January of 2007, Defendant JAYBEE REALTY, LLC, has entered into a Settlement Agreement and Covenant not to Sue, with the RI DEM ("Agreement"). That Agreement provides for Defendant JAYBEE to engage in remediation of the property. That agreement also indicates that Defendant JAYBEE has been a tenant of the property since 1998, and has not contributed to any contamination of the property.

9. That Agreement also provides that Defendant JAYBEE is a "bona fide prospective purchaser" pursuant to state and federal law, and is not liable for any contamination caused by prior owners or users of the property.

10. That Defendant JAYBEE has been engaged in the remediation of its property, with the consent and supervision of the RI DEM.

11. That Plaintiff's land is contaminated by compounds, including arsenic, which are not attributable to Defendants' property.

12. That of the approximately forty-seven acres of Plaintiff's property, less than one-tenth of the property, located at the southeast corner of the land, is believed to be contaminated with VOCs. The presence of those VOCs has not been proven to be caused by any of the Defendants, as numerous properties in the area engaged in activities which could have resulted in the release of VOCs on to Plaintiff's land.

13. That the predecessor in title to Plaintiff agreed to an Environmental Land Use Restriction (ELUR), which was recorded against Plaintiff's property on December 9, 1998.

14. That the RI DEM, pursuant to that ELUR, has required no remediation of the contamination located on Plaintiff's property.

15. That an attorney for Plaintiff's predecessor in title, stated in a 1998 letter to the RI DEM, "the alternative for performing a background determination for the purpose of demonstrating that the arsenic contaminants identified in the soil is a result of background levels, rather than as a result of human activity on site, is not economically feasible . . . especially in light of the fact that the site is not usable for residential purposes at the present time under existing zoning, and that the likely future use of the property is for industrial and commercial purposes."

16. That Plaintiff's expert told Plaintiff, prior to its purchase of the property, that numerous regulatory requirements, other than potential VOC contamination, restricted the use of Plaintiff's property, including the recorded ELUR, the presence of arsenic on site, an existing driftway right of way, power line easements over the property by Narragansett Electric, water and sewer line easements, wetlands and surface body water. Plaintiff's expert stated: "Based upon these environmental conditions and the proposed development of the Site, we believe regulatory compliance for the site is best achieved through the application of the RIDEM's Brownfields Program."

17. That Plaintiff has incurred no recovery costs for its property. It has engaged in no cleanup of hazardous releases. It has failed to provide for an opportunity for public comment and participation, conduct a remedial site investigation, and prepare a feasibility study, of the contamination of its property.

18. That none of the costs identified by Plaintiff in its complaint, such as of site evaluation, drilling of monitoring wells, excavating and disposing of contaminated soil, and pumping

and treating of groundwater, is attributable to Defendants' property contamination, is mandated by the RI DEM, or is in compliance with the National Contingency Plan.

19. That the presence of VOCs on Plaintiff's land does not adversely affect the intended use of the property by Plaintiff for the commercial purpose of building a so-called big box store, such as Home Depot.

**B. SUPPORTING LAW:**

Plaintiff asserts a total of 10 counts, two of which involve the federal statute known as CERCLA, and the remaining claims asserted under various state statutes and common law theories.

**1. COST RECOVERY CLAIM UNDER CERLCA, 42 U.S.C. § 9607(a) and CONTRIBUTION CLAIM UNDER CERCLA, 42 U.S.C. § 9613(f):**

As an initial matter, Plaintiff's claim under 42 U.S.C. § 9607(a), against Defendant JAYBEE, must be dismissed, since JAYBEE has been deemed a bona fide prospective purchaser under that law. Known as Brownfields Agreements, federal law provides protection for purchasers of contaminated property. See 42 U.S.C. § 9607(r) ("Limitation on liability. Notwithstanding subsection (a)(1), a bona fide prospective purchaser whose potential liability for a release or threatened release is based solely on the purchaser's being considered to be an owner or operator of a facility shall not be liable as long as the bona fide prospective purchaser does not impede the performance of a response action or natural resource restoration.")

Similarly, any claim for contribution under 42 U.S.C. § 9613(f) must be dismissed against JAYBEE, because JAYBEE has settled any of its potential liability with the State of

Rhode Island. 42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.")

As for Plaintiff's claims under those statutes against the remaining Defendants, Plaintiff has presented insufficient facts to support those claims.

The United State Supreme Court recently clarified the ability of private parties to seek damages against another party under CERLA. In United States v. Atlantic Research Corp., 127 S. Ct. 2331 (2007), the Court reiterated its finding in Cooper Indus. v. Aviall Servs., 543 U.S. 157 (2004), that recovery for contribution is unavailable unless the party seeking contribution has been subject to a civil action brought under sections 106 or 107 of CERCLA. Since the Plaintiff in this case has not been subject to suit under either sections 106 or 107 of CERCLA, it cannot make out a claim for contribution under § 113 of the Act.

Therefore, the only claim which Plaintiff could make in this case is under section 107(a) of the Act (42 U.S.C. § 9607(a)). A *prima facie* case for CERCLA recovery under § 107(a) has four elements: (1) the property is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP; and (4) the defendant is in one of four categories of potentially responsible parties. Reg'l Airport Auth. v. LFG, LLC, 460 F.3d 697, 703 (6th Cir. 2006); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146 (1st Cir. 1989). While liability to a third party is not a required, § 107(a) permits a party to recover only the costs it has "incurred" in cleaning up a site. 42 U.S.C. § 9607(a)(4)(B). Atlantic Research, 127 S.Ct. at 2338.

In this case, Plaintiff has failed to allege any facts that satisfy the third element of its

*prima facie* case.

> "A response cost must be necessary to the containment and cleanup of hazardous releases. The statutory limitation to necessary costs of cleaning up is important. Without it there would be no check on the temptation to improve one's property and charge the expense of improvement to someone. Consequently, several circuit courts of appeal have concluded a response cost is only necessary if the cost is closely tied to the actual cleanup of hazardous releases. We, too, have recognized costs cannot be deemed necessary to the containment and cleanup of hazardous releases absent some nexus between the alleged response cost and an actual effort to respond to environmental contamination."

Young v. United States, 394 F.3d 858, 863 (10th Cir. 2005) (internal quotations and citations omitted).

In this case, Plaintiff has failed to allege any facts to support a claim that it has engaged in the cleanup of its property.

Any response action must also be "consistent" with the requirements of the National Contingency Plan. 42 U.S.C. § 9605. Under that statute: "Private parties [bringing suit under § 9607(a)] have the burden of proving that cleanup costs associated with remedial actions are consistent with the National Contingency Plan to recover those cleanup costs under CERCLA. 42 U.S.C. § 9607(a)(4)(B)." Carson Harbor Vill., Ltd. v. County of L.A., 433 F.3d 1260, 1265 (9th Cir. 2006).

As relevant to this case, the National Contingency Plan requires that the party seeking recovery provide an opportunity for public comment and participation, conduct a remedial site investigation, and prepare a feasibility study. 40 C.F.R. §§ 300.700(c)(5)(vii)-(viii), (c)(6).

> "The NCP provides "[a] private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in [40 C.F.R. § 300.700(c)(5)-(6)], and results in a CERCLA-quality cleanup[.]" 40 C.F.R. § 300.700(c)(3)(i) (emphasis added). In turn, § 300.700(c)(5)-(6) provide requirements for worker health and safety, documentation of cost recovery, permit requirements, identification of applicable and appropriate requirements, remedial site investigation, selection of a remedy, and providing an

> opportunity for public comment concerning the selection of a response action. A "CERCLA-quality cleanup" results if the response action protects human health and the environment through the utilization of permanent solutions and alternative treatment or resource recovery technologies to the maximum extent possible."

Young, at 864 (citations omitted).

Since Plaintiff cannot show that it has complied with any of these requirements, it cannot sustain a cost recovery action under CERCLA. To the extent that Plaintiff is limited to the use of its property, or must engage in remediation, it is due to factors not related to the presence of any VOCs attributable to Defendants' property, but is due to the presence of arsenic, and other restrictions on Plaintiff's land, such as zoning, easements, and wetlands.

**2. NEGLIGENCE:**

As Defendant JAYBEE did not cause any of the contamination alleged by Plaintiff, it cannot be held responsible under a negligence theory. As for the allegation that remaining Defendants engaged in conduct which harmed Plaintiff's property, such conduct occurred more than ten years prior to the institution of this complaint, and is barred by the statute of limitations.

Plaintiff appears to rely primarily on Corvello v. New Eng. Gas Co., 460 F. Supp. 2d 314 (D.R.I. 2006), in support of its negligence claim. That case is inapplicable here, because the plaintiffs in that case had no prior knowledge of the contamination, and no reason to inspect the property, obtain representations or warranties from the seller, or seek indemnity or a reduction in the sales price to reflect the property's true value. This case is therefore more akin to the cases of Hydro-Manufacturing v. Kayser-Roth Corp., 640 A.2d 950 (R.I. 1994) and Wilson Auto Enters., Inc. v. Mobil Oil Corp., 778 F. Supp. 101 (D.R.I. 1991), both of which prohibited recovery to plaintiffs who had or could have reasonably discovered the contamination at issue,

prior to purchasing their property.

**3. PUBLIC NUISANCE:**

Recently, the Rhode Island Supreme Court clarified that, "under Rhode Island law, a complaint for public nuisance minimally must allege: (1) an unreasonable interference; (2) with a right common to the general public; (3) by a person or people with control over the instrumentality alleged to have created the nuisance when the damage occurred; and (4) causation." State v. Lead Indus. Ass'n, 951 A.2d 428, 452-3 (R.I. 2008). In this case, Plaintiff cannot prove all elements of its case. There is no common right at issue in this case. Defendant JAYBEE, did not have control of the alleged contaminants at the time of the damage allegedly occurred, nor was it the cause of any such alleged contamination and damage.

A private citizen may bring an action for public nuisance only if that person "suffers special damage, distinct from that common to the public." Hydro-Manufacturing v. Kayser-Roth Corp., 640 A.2d 950, 957, (R.I. 1994) (quoting Iafrate v. Ramsden, 96 R.I. 216, 190 A.2d 473, 476 (1963)).

> Thus, in Hydro Manufacturing, the Court rejected a public nuisance claim by a landowner whose property was forfeited under CERCLA as a result of contamination caused by a prior owner that polluted the groundwater. The Court held that the landowner could not maintain a public nuisance action against the prior owner because the public right interfered with was "the right to pure water" and the landowner "did not allege that it suffered special damages stemming from [the defendant's] interference with [the plaintiff's] use and enjoyment of the ground water at the site or of its right to pure water." Id. at 958. The Court noted that the landowner's damages flowed from the forfeiture of its property and "not in the exercise of a public right." Id.

Corvello v. New Eng. Gas Co., 460 F. Supp. 2d at 325. In this case, Plaintiff is alleging as damages the diminution in value to its land, not its inability to use groundwater on its property. Therefore, it cannot maintain an action for public nuisance.

**4. PRIVATE, NUISANCE; TRESPASS; EQUITABLE INDEMNIFICATION and DIMINUTION OF VALUE OF PLAINTIFF'S LAND:**

Since Plaintiff does not reference these claims in its pre-trial memorandum, Defendants will not address the claims, and consider them abandoned.

**5. STRICT LIABILITY:**

A right of action for strict liability is explained in Corvello v. New Eng. Gas Co., 460 F. Supp. 2d 314 (D.R.I. 2006), as follows:

> "A defendant who knowingly engages in abnormally dangerous activity or causes an abnormally dangerous condition to exist, may be held liable for any resulting harm to persons or property even if the defendant exercised reasonable care."

Restatement (Second) of Torts § 519(1) (1977). The Court in Corvello cited Splendorio v. Bilray Demolition Co., Inc., 682 A.2d 461, 465 (R.I. 1996), for the proposition that "whether a defendant should be held strictly liable for ultra-hazardous or abnormally dangerous activities is a question of law."

> "However, it also has stated that determining whether an activity is ultra-hazardous or abnormally dangerous requires consideration of a variety of factors set forth in the Restatement (Second) of Torts and that [t]he weight apportioned to each [factor] should be dependent upon the facts in each particular case. The factors to be considered are:
>
> (a) existence of high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes."

Id. (quoting Restatement (Second) of Torts § 520 (1977)). The Court must be mindful that:

> "The mere fact that an activity involves an ultra-hazardous or abnormally dangerous substance is not, by itself, sufficient to trigger strict liability. As the Splendorio Court

> stated, 'if the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable.' Splendorio, 682 A.2d at 465-66."

Corvello, 460 F.Supp.2d at 322. Plaintiff has failed to allege facts sufficient to establish that Defendants were engaged in any activity of an ultra-hazardous or abnormally dangerous variety which would trigger a claim under a theory of strict liability theory.

**6. VIOLATION OF RI WATER POLLUTION CONTROL ACT:**

Plaintiff cites to R.I. Gen. Laws § 46-12-1, et seq., in support of this claim. Presumably, Plaintiff refers to § 46-12-21, which provides: "Any person who shall negligently or intentionally pollute groundwater shall be liable to any other person who is damaged by that pollution."

That statute took effect in 1980. See Hydro-Manufacturing v. Kayser-Roth Corp., 640 A.2d 950 (R.I. 1994). Its cannot be applied retroactively to activity which occurred prior to its enactment. Mere ownership of contaminated property does not trigger liability under the statute. Raymond K. Hoxsie Real Estate Trust v. Exxon Educ. Found., 81 F. Supp. 2d 359, 370 (D.R.I. 2000). To be liable, a party must engage in negligent or intentional conduct within the time period contemplated the statute. Since the statute is silent on a statute of limitations, the general ten year statute of limitations would apply. See R.I. Gen. Laws § 9-1-13.

In this case, Plaintiff cannot establish that Defendants actions occurred within ten years prior to the commencement of its suit on March 5, 2007. In fact, the evidence strongly suggests that any contamination of the groundwater occurred well before that time.

Even were the Plaintiff able to prove that any of the Defendants caused groundwater contamination within ten years of the filing of its complaint, Plaintiff cannot establish the

damages it alleges, site remediation and diminution of land value, are attributable to that contamination.

**7. PROXIMATE CAUSE:**

Plaintiff references this claim in its pre-trial memorandum; however, there is no such count in Plaintiff's complaint. Since Plaintiff has failed to move to amend its Complaint to include this Count, it should not be considered by the Court. In any event, Plaintiff's citation to RI case law suggests that this is just an element of Plaintiff's negligence claim.

**C. PROBABLE LENGTH OF TRIAL:**

Defendants concur with Plaintiff's estimation that the trial will last approximately six (6) or seven (7) days.

Defendants,
FRANKEN REALTY, Coval Kenneth Wild, Jr.,
Doug Laing and Frank Rawcliffe, .
By their attorneys

/s/Thomas C. Angelone, Esq., #1373

HODOSH, SPINELLA & ANGELONE, PC
One Turks Head Building, Suite 810
Providence, RI 02903
(401) 274-0200
Fax (401) 274-7538
angelonelaw@aol.com

Defendants,
JAYBEE REALTY, LLC

By its attorneys,

/s/Joseph A. Sciacca , #3367
/s/Gregory P. Piccirilli, #4582
SCIACCA & PICCIRILLI
121 Phenix Avenue
Cranston, RI 02920
(401) 946-4900
Fax (401) 944-3250
joseph@splawri.com
gregory@splawri.com

**CERTIFICATION**

I hereby certify that on September 11, 2008, I sent a true copy of the within by electronic mail to the following:

Stephen A. Izzi, Esq.
Moses Afonso Jackvony, Ltd.
170 Westminster Street, Suite 201
Providence, RI 02903
sizzi@mosesafonso.com